# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**


        **v.**                                          **Case No. 14-CR-64**


**SIPHANH PHONGSAVATH,**
**JORGE L. ARRIETA, JOSE A. CORREA,**
**JAROLD CRUZ, LUIS A. ORTIZ,**
**and DAVID VEGA, JR.**
        **Defendants.**

---

## DECISION AND ORDER

The government charged defendants Siphanh Phongsavath, Jorge Arrieta, Jose Correa, Jarold Cruz, Luis Ortiz, and David Vega, Jr. with obstructing commerce and the movement of articles in commerce by committing a series of robberies or attempted robberies of business owners, contrary to the Hobbs Act, 18 U.S.C. § 1951. Specifically, count one alleges that on December 23, 2012, Phongsavath, Cruz, and Ortiz took $120,000 from the owner of Pacific Produce; count two alleges that on January 1, 2013, Phongsavath, Cruz, and Ortiz took $10,000 from the owner of Kainth Beer and Liquor Store; count three alleges that on January 21, 2013, Phongsavath, Cruz, and Ortiz took currency and a Honda Pilot motor vehicle from the owner of Dhillon Beer and Liquor Store; count four alleges that on July 8, 2013, Phongsavath, Cruz, Ortiz, and Vega took currency and jewelry from the owner of the Ho Ho Gourmet restaurant; count five alleges that on July 11, 2013, Phongsavath, Ortiz, and Vega took currency, jewelry, and a Nissan Sentra motor vehicle from the building owner of the Peking Restaurant; count six alleges that on August 22, 2013, Phongsavath, Arrieta, and

Correa attempted to take currency from the owner of the Green Jade Restaurant; and count seven alleges that on October 4, 2013, Phongsavath and Vega attempted to take currency from the owner of Juto Restaurant. Count eight alleges that during the October 4, 2013 robbery charged in count seven Phongsavath and Vega discharged a firearm, contrary to 18 U.S.C. § 924(c)(1)(A)(iii).

Phongsavath moved to dismiss counts one through six and Ortiz counts one through five based on the insufficiency of the indictment, while defendants Arrieta and Correa moved to sever count six. The magistrate judge handling pre-trial proceedings in this case recommended denial of the motions to dismiss and denied the motions to sever. Defendants object. I review the magistrate judge's recommendation on the motions to dismiss de novo, Fed. R. Crim. P. 59(b), but I may set aside his order on the severance motions only if it is contrary to law or clearly erroneous, Fed. R. Crim. P. 59(a).

## I. MOTIONS TO DISMISS

### A. Legal Standards

Under Fed. R. Civ. P. 7(c)(1), the indictment must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. "To be sufficient, an indictment must fulfill three distinct functions. First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense." United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000). Nothing more is required. United States v. Phillips, 645 F.3d 859, 861 (7th Cir. 2011). An indictment need not "exhaustively recount the facts

surrounding the crime's commission," United States v. Agostino, 132 F.3d 1183, 1189 (7th Cir. 1997), or provide the details of how it will be proved, id. at 1191. Simply tracking the language of the charging statute will generally suffice. Id. at 1189.

Further, at the pre-trial stage, the indictment is tested solely by its sufficiency to charge an offense, United States v. Sampson, 371 U.S. 75, 78-79 (1962), regardless of the strength or weakness of the government's case, or the sufficiency of the government's evidence, United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009); see also United States v. Yasak, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a summary trial of the evidence.") (internal quote marks omitted); United States v. Di Fonzo, 603 F.2d 1260, 1263 (7th Cir. 1979) ("The defendant is not permitted to transcend the four-corners of the indictment in order to demonstrate its insufficiency."). Ultimately, the question on a motion to dismiss is not whether the indictment alleges sufficient facts from which a jury could find guilt, but rather whether the government conceivably could produce such evidence at trial. United States v. Castor, 558 F.2d 379, 384 (7th Cir. 1977).

## B.    Analysis

Phongsavath argues that because of its ambiguity the indictment violates the Fifth Amendment's Indictment Clause and fails to provide him with sufficient notice to prepare a defense. Essentially, he contends that the indictment fails to tell him whether he is alleged to have robbed individuals (who happen to own businesses) or the businesses themselves. This matters, he contends, because courts draw a distinction under the Hobbs Act between the robbery or extortion of an individual and the robbery or extortion of a business. United States v. Moore, 363 F.3d 631, 636 (7th Cir. 2004), vacated on other grounds, 543 U.S. 1100 (2005). Phongsavath and Ortiz both argue that the indictment fails to allege facts sufficient to provide

Hobbs Act jurisdiction.

The Hobbs Act provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).  Given the broad language of the statute, courts have held that "the government need only show some actual, even if de minimis, effect, or, where there is no actual effect, a realistic probability of an effect, on interstate commerce to bring robbery within its prosecutorial reach."  United States v. Peterson, 236 F.3d 848, 851-52 (7th Cir. 2001).  For instance, courts have upheld Hobbs Act convictions pursuant to the "depletion of assets" theory, under which the government presents evidence that a business is either actively engaged in interstate commerce or customarily purchases items in interstate commerce and had its assets depleted by a robbery.  Id. at 854

As summarized above, the instant indictment states that defendants robbed the owners of specified businesses.  Courts have upheld Hobbs Act prosecutions based on the robbery of individuals in their capacity as business owners.  See, e.g., United States v. Tahn Le, 542 Fed. Appx. 108, 113 (3d Cir. 2013); United States v. Powell, 693 F.3d 398, 407 (3d Cir. 2012); United States v. Rodriguez-Casiano, 425 F.3d 12, 15 (1st Cir. 2005); United States v. Jamison, 299 F.3d 114, 119 (2d Cir. 2002); United States v. Le, 256 F.3d 1229, 1237 (11th Cir. 2001); United States v. Nguyen, 246 F.3d 52, 54 (1st Cir. 2001); see also Moore, 363 F.3d at 636 ("Individual drug dealers, however, when robbed in their capacity as such, are treated as business entities.").  This is sometimes called the "targeting" theory, under which the

4

government shows that the defendants selected store owners as their victims, seeking to steal the stores' earnings and assets, but completed the crime at the owner's home rather than the business. See, e.g., Powell, 693 F.3d at 404-05. Given these cases, there is no basis for Phongsavath's claim that the government is through ambiguous language attempting to disguise the specifics of the charge in a way that broadens the scope of the Hobbs Act.

Tracking the language of the statute, the instant indictment further alleges that defendants "did unlawfully obstruct, delay and affect commerce and the movement of articles and commodities in commerce." Whether the government can prove the required effect on interstate commerce is an issue for trial. See United States v. Flores, 855 F. Supp. 638, 643 (S.D.N.Y. 1994) (denying motion to dismiss raising similar commerce challenge to Hobbs Act indictment). Defendants provide no authority for their contention that the indictment must specifically allege that the items taken were business assets or that the victims were targeted because of their status as business owners. See Agostino, 132 F.3d at 1191 (stating that an indictment need not spell out the government's theory of prosecution; United States v. Kendall, 665 F.2d 126, 135 (7th Cir.1981) ("The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved."). It is telling that the Hobbs Act cases on which defendants rely involved an assessment of the sufficiency of the evidence presented at trial. United States v. Wang, 222 F.3d 234 (6th Cir. 2000); United States v. Collins, 40 F.3d 95 (5th Cir. 1994). Defendants cite no case in which a Hobbs Act indictment was dismissed pre-trial for failure to sufficiently explain or demonstrate the effect on commerce.[1]

_____

[1]While the Wang and Collins courts found the evidence insufficient in those cases, neither court held that acts directed at individuals could never come within the coverage of the

Finally, the indictment provides sufficient detail to allow defendants to prepare for trial. It advises when and where the robberies occurred; who participated in them; what was taken, from whom, and by what means. Defendants may object if at trial the government presents evidence at variance with the indictment in a manner that prejudices their defense. See Stirone v. United States, 361 U.S. 212, 217 (1960). But at this point there is no basis for concluding that the indictment is so vague as to invite conviction on the basis of facts not found by the grand jury. See Russell v. United States, 369 U.S. 749, 770 (1962); United States v. Roman, 728 F.2d 846, 854 (7th Cir. 1984).[2] For these reasons and those stated by the magistrate judge, the motions to dismiss will be denied.[3]

---

Hobbs Act. Wang, 222 F.3d at 240 (stating that the government might make the necessary showing "by demonstrating that the defendant knew of or was motivated by the individual victim's connection to interstate commerce"); Collins, 40 F.3d at 100 (explaining when criminal acts directed toward individuals may violate § 1951).

[2]In Russell, the Court found the indictment deficient because it failed to allege an essential aspect of the crime and did not adequately apprise the defendants of what they must be prepared to meet. 369 U.S. at 767-68. The Court concluded that the indictment could not be saved by a bill of particulars, and that allowing the prosecutor or court to guess at what was in the minds of the grand jury would deprive the defendants of Fifth Amendment protections and could allow conviction on facts not found by the grand jury. Id. at 770. In the present case, the indictment does not omit any essential facts, and it provides sufficient detail to allow defendants to prepare a defense. In Roman, the court rejected the defendant's Indictment Clause argument because the indictment, while perhaps not as detailed as the court would have liked, provided sufficient specifics on what the defendants did, when, and where. 728 F.2d at 855. The same is true of the instant indictment.

[3]In his objections, Phongsavath argues that the government should be found to have conceded to his motion because the government addressed only the Hobbs Act jurisdictional argument, ignoring his Indictment Clause and sufficient notice arguments. (He also faults the magistrate judge for not separately addressing his Indictment Clause argument.) Phongsavath's arguments are inter-related; he claims that the indictment is ambiguous because it does not specify the commerce connection required by the Hobbs Act. I note that Phongsavath does not move to dismiss count seven, even though it is phrased the same as the other counts. According to the government's response, the count seven robbery allegedly occurred on the premises of Juto Restaurant (see R. 77 at 7) and thus ostensibly does not

## II. MOTIONS TO SEVER

**A.    Legal Standards**

Under Fed. R. Crim. P. 8(b), "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."  The Seventh Circuit has construed the phrase "same series of acts or transactions" to mean acts or transactions that are pursuant to a common plan or common scheme. United States v. Velasquez, 772 F.2d 1348, 1353 (7th Cir. 1985).  The court examines joinder from the perspective of the allegations contained in the indictment, not the evidence that may be adduced at trial.  United States v. Todosijevic, 161 F.3d 479, 484 (7th Cir. 1998).

Under Fed. R. Crim. P. 14, the court may sever otherwise properly joined defendants if a joint trial would prejudice a defendant.  Because of the strong interest in joint trials, a defendant must show that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgement.  United States v. Souffront, 338 F.3d 809, 831 (7th Cir. 2003).  Mere disparity in the evidence against the defendants does not require severance, so long as the jury is properly instructed to consider each defendant's culpability separately.  See, e.g., United States v. Mansoori, 304 F.3d 635, 664-65 (7th Cir. 2002).

---

raise the same jurisdictional concerns.  In any event, Phongsavath provides no authority for dismissing an indictment simply because the government failed to address every issue raised by a motion.  I also note that in its response to the motion the government provided a detailed recitation of the evidence it plans to present and its theory of prosecution.  While I decide the motion based on the face of the indictment, Phongsavath's claim that the government is deliberately trying to frustrate his ability to defend himself rings hollow.

**B.    Analysis**

The magistrate judge denied the motions to sever, noting that although Arrieta and Correa were not charged in any of the other counts, count six appeared to be part of the "same series" of Hobbs Act robberies of business owners between December 2012 and October 2013.  He further found that Arrieta and Correa failed to demonstrate that a jury could not compartmentalize the evidence relating to each count, thereby mitigating the danger that they would be found guilty by association with the other defendants.

In their objections, Correa and Arrieta argue that the only common thread between count six and the other counts in Phongsavath.  They indicate that while Phongsavath may have conspired with others to commit additional robberies, the mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one common plan or scheme, see Velasquez, 772 F.2d at 1353; they contend that it is hard to discern any common scheme or plan in all of these disparate offenses.  As the magistrate judge noted, however, the instant offenses are not disparate; the indictment alleges a series of Hobbs Act robberies of business owners.[4]  Further, "Rule 8(b) does not require that all defendants be charged in the same count, nor that each defendant participate in precisely

_____

[4]That count six charges an <u>attempted</u> home invasion robbery, while the other counts allege <u>completed</u> robberies, does not make the counts disparate.  As the magistrate judge noted, the motions are properly decided based on the face of the indictment.  But to the extent that the parties discussed the evidence, it only bolstered the magistrate judge's conclusion. (R. 80 at 16.)  "The government alleges that Arrieta, Correa, and Phongsavath were arrested after owners of a restaurant arrived home and observed two of the subjects attempting to gain entry into their residence.  The government further alleges that law enforcement officers recovered two firearms, zip ties, and duct tape from the subjects' vehicle.  Thus, it seems quite disingenuous for the defendants to argue that Count Six is not part of the same series of Hobbs Act robberies merely because they were caught by police at the doorstep of a private residence of a business owner, whereas in the other counts their co-defendants managed to make it inside."  (<u>Id.</u>)

the same act or transaction." <u>United States v. Valentino</u>, 436 Fed. Appx. 700, 706 (7th Cir. 2011).

> Instead, the rule permits joinder of defendants engaged in a series of acts that are logically related. What is necessary is a common plan or scheme, which turns on whether the transactions are interconnected in time, place, and manner. A typical relationship justifying joinder is the defendants' mutual reliance on a common third party to link their individual, yet similar, schemes.

<u>Id.</u> (internal citations omitted). Here, the charged offenses appear to be logically related, as the magistrate judge explained, and the defendants are further linked by their mutual reliance on Phongsavath.

Correa and Arrieta argue that count six should be severed because they will be tainted by the evidence of all the bad things the co-defendants did. As noted, however, disparity in the evidence alone will not support severance, and courts presume that juries follow instructions to consider each defendant individually. <u>Zafiro v. United States</u>, 506 U.S. 534, 540-41 (1993). Correa and Arrieta further argue that the risk of prejudice is elevated by the joinder of multiple offenses of similar character. However, the case they cite for this proposition involved the joinder of counts under Rule 8(a)'s "same or similar character" provision. <u>United States v. Turner</u>, 93 F.3d 276, 284 (7th Cir. 1996). As courts have discussed, this provision is the broadest of the three possible bases for joinder in Rule 8(a), but, contradictorily, the one least likely to serve the purposes of joinder (judicial economy and convenience). <u>See, e.g.</u>, <u>United States v. Jenkins</u>, 884 F. Supp. 2d 789, 791 (E.D. Wis. 2012). This case involves Rule 8(b)'s common scheme provision for joining defendants, which does not give rise to the same concerns.

Correa and Arrieta fail to show that the magistrate judge's denial of their motions to sever was contrary to law or clearly erroneous. I thus decline to overturn his order.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' objections are overruled, the magistrate judge's recommendation (R. 80) is adopted, and the motions to dismiss (R. 71 & 73) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 9th day of February, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge